# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ERVIN ALLEN, SR. (#585420)**                    **CIVIL ACTION**

**VERSUS**

**BURL CAIN, WARDEN**                    **NO. 15-0492-JWD-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 16, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ERVIN ALLEN, SR. (#585420)**                                    **CIVIL ACTION**

**VERSUS**

**BURL CAIN, WARDEN**                                    **NO. 15-0492-JWD-EWD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the application of Petitioner Ervin Allen, Sr., for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons that follow, Petitioner's application should be denied.   There is no need for oral argument or for an evidentiary hearing.

### I. Procedural History

On August 30, 2007, pursuant to grand jury indictment returned in the Eighteenth Judicial District Court for the Parish of Iberville, State of Louisiana, Petitioner was charged with two counts of first-degree murder.   The Indictment was later amended, on the morning of trial, to charge Petitioner with two counts of second-degree murder.   In response to the charges, Petitioner entered a plea of not guilty and not guilty by reason of insanity, and a sanity commission was thereafter appointed to evaluate Petitioner's ability to assist with his defense and his ability to discern right from wrong at the time of commission of the offenses.   Upon a determination by the trial court that Petitioner was able to assist with his defense, a trial by jury was conducted in May 2011, after which the jury found Petitioner guilty of the two counts of second degree murder. Upon the denial of post-trial motions, the trial judge sentenced Petitioner on July 6, 2011 to life imprisonment on both counts, without the benefit of probation, parole or suspension of sentence.

Petitioner pursued a direct appeal, asserting that (1) the trial court erred in allowing into evidence a tape recording of a divorce proceeding involving Petitioner and his deceased victim/wife that was conducted shortly before the murders, during which proceeding allegations were made of alleged acts of sexual misconduct committed by Petitioner, (2) the prosecution failed to carry its burden of proving that Petitioner was not delusional and legally insane at the time he committed the offenses, and (3) in the alternative, the evidence supported verdicts of manslaughter instead of second degree murder.   On June 8, 2012, the Louisiana Court of Appeal for the First Circuit affirmed Petitioner's convictions and sentences.   *State v. Allen*, 2012 WL 2061472 (La. App. 1 Cir. June 8, 2012).   Petitioner thereafter failed to seek further review before the Louisiana Supreme Court.   As a result, his convictions became final thirty days later, on July 9, 2012, upon the expiration of the time allowed for him to do so.[1]

On or about July 19, 2013, Petitioner filed an application for post-conviction relief ("PCR") in the state trial court.[2]   Petitioner asserted therein that (1) his constitutional right to due process

---

[1]   In Louisiana, a judgment of conviction generally becomes final for federal purposes thirty days after the decision of a lower state court when a petitioner fails to proceed to the next level of state appellate review.   This is because state procedural law allows a thirty-day period for a petitioner to so proceed.   *See Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001), and discussion, *infra.*

[2]   Petitioner's application for post-conviction relief was signed and dated by Petitioner on July 18, 2013, was notarized on July 19, 2013 and was stamped "Filed" in the state district court on July 25, 2013.   The United States Court of Appeals for the Fifth Circuit has instructed that federal habeas courts within the State of Louisiana must apply Louisiana's "mailbox rule" when determining the filing date of a petitioner's state court filings.   Accordingly, pleadings submitted by a *pro se* habeas petitioner are considered to be "filed" in state court as of the moment that the prisoner places them in the prison mail system for submission to the court, not on the date that the pleadings are ultimately received or docketed by the receiving court.   *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006); *Lane v. Rogers*, 2012 WL 3160034, *1 n. 3 (E.D. La. June 21, 2012).   Thus, although Petitioner's application was marked "Filed" in the district court on July 25, 2013, the Court will utilize the earliest date on which Petitioner potentially gave it to prison officials for mailing, i.e., July 19, 2013, when he had his application notarized.   In addition, unless otherwise noted, the Court in hereafter referencing the dates of filing of Petitioner's pleadings in

and to a fair trial was violated by the failure of the trial court to advise the jury on the defense of insanity, (2) his constitutional rights were violated by the use of statements made by him after arrest that were not shown to be knowingly and voluntarily made in light of his mental state at the time of the statements, (3) his constitutional rights were violated by admission into evidence of the recording of divorce proceedings that preceded the commission of the offenses, (4) he was provided with ineffective assistance of counsel at trial, and (5) he was provided with ineffective assistance of counsel on appeal.[3]

The State filed a response to Petitioner's PCR application and, after consideration of that response, the trial court denied Petitioner's PCR application on the merits on November 20, 2013.

The record reflects that Petitioner thereafter pursued further review in connection with his PCR application by filing applications for supervisory review before both the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court, which courts denied review without comment on June 2, 2014 and May 15, 2015, respectively.   *See State v. Allen*, 169 So.3d 382 (La. 2015).

Finally, Petitioner submitted his federal habeas corpus application for filing herein on or about June 10, 2015.   Petitioner asserts the following grounds for relief:

Ground One:   The State violated Petitioner's constitutional rights by withholding evidence regarding Petitioner's legal insanity at the time of commission of the offenses in violation of *Brady v. Maryland,* 373 U.S. 83 (1963);

the state courts and in this Court will utilize the dates that Petitioner apparently signed his respective pleadings as the dates of filing thereof in the respective courts.

3       Petitioner also included, in connection with Claim No. 3, an assertion that there was insufficient evidence to convict in light of the failure of the State to introduce evidence that the weapon used to commit the offenses was fired by him.   In addition, in his supporting memorandum, Petitioner included additional jumbled assertions, including that the State allegedly failure to overcome his defense of legal insanity and that the State allegedly withheld evidence of a medical report that he contends conclusively established his insanity at the time of commission of the offenses.

Ground Two:          There was insufficient evidence of his specific intent to commit the charged offenses in light of the (withheld) medical report that established his insanity at the time of commission of the offenses;

Ground Three:         He was denied his Sixth Amendment right to the effective assistance of counsel in several respects;

Ground Four:          There was insufficient evidence to establish that Petitioner was not legally insane at the time of commission of the offenses; and

Ground Five:          His constitutional rights were violated by the amendment of the indictment on the morning of trial, reflecting a change in the charges from first degree murder to second degree murder.

As discussed hereafter, the Court finds that based upon the foregoing procedural recitation, Petitioner's application before this Court is untimely and should be dismissed.

## II. Factual Summary

The facts, as summarized in the opinion of the Louisiana Court of Appeal for the First Circuit, are as follows:

On June 12, 2007, officers of the White Castle Police Department were dispatched to the scene of a shooting. When Chief Mario Brown arrived at the scene, the defendant's residence, the defendant was outside. Chief Brown was familiar with the defendant and his family. The defendant walked toward one of the police units that responded to the scene with his hands out and asked Chief Brown, whom he referred to on a first name basis, if he was there to arrest him, further stating that he just killed his wife, Lorna Allen, and his twenty-seven-year-old stepdaughter, Herkeisha Young. Chief Brown observed blood on the defendant's attire. As he handcuffed and escorted him to a police vehicle and began reading him his *Miranda*[1] warnings, the defendant informed the officer of the location of the gun and knife he used in committing the instant offenses. After securing the defendant, the officer entered the home. Mrs. Allen's mother, Earline Jackson, was present at the scene and was looking for Young, and Chief Brown instructed her to exit the

home. Chief Brown observed Mrs. Allen on the floor in a pool of blood, motionless, with a telephone in her left hand and a gunshot wound to the head. Chief Brown saw a case that contained two BB guns and CO–2 cartridges on a chair in the room that adjoined the garage and located another gun and a hunting knife in the back of the house, hidden under cinder blocks as the defendant had indicated.

Chief Brown located Young's body in one of the bedrooms on the second floor of the home. There were bullet casings leading to the room where Young was located and there were bullet holes in the door of the room. As Chief Brown entered the room, he could hear Young making sounds that he described as "gargling or regurgitating" or a "gasp for air." There was blood all over the room and it was in disarray. Chief Brown used his radio to announce that one of the victims was still alive, stepped out when EMS arrived, and turned the investigation over to the Iberville Parish Sheriff's Office.

*See State v. Allen, supra*, 2012 WL 2061472 at *1-2.

Additional evidence was also adduced at trial, including (1) evidence relative to the contentious divorce proceeding involving Petitioner and his victim/wife that occurred immediately prior to the commission of the offenses, (2) testimony from Petitioner's biological children that, upon returning home after the divorce proceeding (to the house that he then shared with his victim/wife), Petitioner gave his children money with instructions to leave the house and go get snowballs, suggesting the clarity of his mental state and forethought relative to the ensuing events, (3) evidence relative to Petitioner's considered actions in choosing the weapon that he used to commit the offenses and in his actions in reloading the gun during the commission of the offenses, and (4) evidence from mental health experts relative to Petitioner's state of mind at the time of commission of the offenses.

### III. Procedural Defense Of Untimeliness

In responding to Petitioner's application, the State relies upon a contention that Petitioner's application before this Court is subject to dismissal because Petitioner has failed to exhaust state court remedies as mandated by federal law. Notwithstanding, this Court concludes that it need not address the State's contention in this regard because Petitioner's application before this Court is clearly untimely.[4]   In this regard, pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date that the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the referenced statute, the time during which a subsequent properly-filed application for state post-conviction or other collateral review is thereafter pending before the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). However, the time during which there are not any properly-filed post-conviction or other collateral review proceedings pending does count toward calculation of the one-year period. *Flanagan v. Johnson,* 154 F.3d 196, 199 n. 1 (5th Cir. 1998). *See also Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998). To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the state's applicable laws and procedural rules governing

---

4       A district court is permitted to consider, *sua sponte*, the timeliness of a petitioner's habeas corpus petition, provided that notice and an opportunity to respond is afforded to the petitioner. *See Day v. McDonough*, 547 U.S. 198, 209-10 (2006). The Court hereby advises Petitioner that this Report constitutes notice that this Court is *sua sponte* raising the issue of timeliness, and the Court further advises Petitioner that, in accordance with 28 U.S.C. § 636(b)(1), he has a period of fourteen (14) days from the date of service of this Report to file written objections to the proposed findings of fact and conclusions of law herein, and he may submit any evidence or argument he may have concerning the timeliness issue in connection with such written objections.

filings.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000).   Further, a state application is seen to be "pending" both while it is before a state court for review and also during the interval of time after a state court's disposition while the petitioner is procedurally authorized under state law to proceed to the next level of state consideration. *Melancon v. Kaylo*, *supra*, 259 F.3d at 406.

In the instant case, as noted above, Petitioner's convictions became final on July 9, 2012. He thereafter waited more than a year, or until July 18 and 19, 2013, respectively, to sign, notarize and submit his post-conviction relief application for filing in the state district court.   It thus appears clear that the federal limitations period had already elapsed prior to the filing of Petitioner's state PCR application, and the subsequent pendency of that application before the state district and appellate courts did not resurrect or extend the limitations period.   Accordingly, Petitioner's habeas corpus application before this Court is untimely.

Having found Petitioner's application to be untimely, this Court must dismiss same pursuant to 28 U.S.C. § 2244(d) unless Petitioner can establish either that he is entitled to statutory tolling of the limitations period under § 2244(d)(1)(B) – because there was a state-created impediment to timely filing – or that he is entitled to equitable tolling.

To establish entitlement to statutory tolling under 28 U.S.C. § 2244(d)(1)(B), Petitioner must show that some state action, in violation of the Constitution or federal law, prevented him from filing a timely petition.   *See Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). Petitioner has made no such showing in this case.   Accordingly, there is no legal or factual basis in the record for a finding that Petitioner is entitled to statutory tolling under this section.

Nor is there any basis in the record for equitable tolling in this case.   In this regard, the one-year federal limitations period is subject to equitable tolling only "in rare and exceptional

circumstances," *see United States v. Patterson*, 211 F.3d 927, 928 (5th Cir. 2000), and the burden is on Petitioner to establish that equitable tolling is warranted. *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009). The doctrine of equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006). Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance has stood in his way. *Pace v. DeGuglielmo, supra*, 544 U.S. at 418. Ignorance of the law, lack of knowledge of filing deadlines, or a temporary denial of access to research materials or an adequate law library, are not generally sufficient to warrant equitable tolling. *Tate v. Parker*, 439 Fed. Appx. 375, 376 (5th Cir. 2011); *Felder v. Johnson*, 204 F.3d 168, 171-2 (5th Cir. 2000). Further, equitable tolling "is not intended for those who sleep on their rights." *Manning v. Epps,* 688 F.3d 177, 184 (5th Cir. 2012). Thus, a federal habeas petitioner is required to act with diligence and alacrity both during the period allowed for the filing of state post-conviction review proceedings and also after the denial thereof by the state appellate courts. *See Ramos v. Director*, 2010 WL 774986, *4 (E.D. Tex. March 1, 2010). "The diligence required for equitable tolling purposes is reasonable diligence, ... not maximum feasible diligence," *Holland v. Florida*, 560 U.S. 631, 653 (2010) (internal quotation marks omitted), and equitable tolling decisions "must be made on a case-by-case basis." *Id.* at 649-50.

In the instant case, there is no suggestion that such exceptional circumstances exist as would entitle Petitioner to equitable tolling in this case. Accordingly, his untimely application for

habeas corpus relief should be dismissed.

## Certificate Of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In the instant case, the Court finds that reasonable jurists would not debate the denial of Petitioner's § 2254 application or the correctness of the procedural ruling. Accordingly, it is appropriate that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

## RECOMMENDATION

It is recommended that Petitioner's application for habeas corpus be denied and that this proceeding be dismissed, with prejudice. It is further recommended that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on July 16, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**